Filed 6/21/16  A.H. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| A. H., <br><br>     Petitioner, <br><br>       v. <br><br> THE SUPERIOR COURT OF FRESNO COUNTY, <br><br>     Respondent; <br><br> FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br>     Respondent. | F073440 <br><br> (Super. Ct. No. 14CEJ300181-2) <br><br><br> **OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDING; petition for extraordinary writ review.  Mary Dolas, Judge.

Elaine Henderson, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Brent C. Woodward, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Gomes, Acting P.J., Detjen, J. and Franson, J.

A.H. (mother) seeks extraordinary writ relief from the juvenile court's orders issued at a contested 12 and 18-month review hearing (Welf. & Inst. Code, §§ 366.21, subd. (f)(1) & 366.22, subd. (a)(1))[1] terminating her reunification services and setting a section 366.26 hearing as to her now nine-year-old daughter M.L. Mother contends the juvenile court erred in finding it would be detrimental to return M.L. to her custody and in finding she was provided reasonable visitation. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

In October 2014, the juvenile court exercised its dependency jurisdiction over mother's two daughters, then 10-year-old J.H. and seven-year-old M.L., after sustaining allegations that mother and her ex-girlfriend doused each other with lighter fluid during a domestic altercation in the presence of the children. The court ordered mother to participate in parenting, substance abuse, mental health and domestic violence services. The court denied reunification services for J.H.'s alleged fathers and for M.L.'s presumed father. The court also ordered a minimum of one weekly supervised visit for mother, J.H. and M.L., and granted the Fresno County Department of Social Services (department) discretion to advance to unsupervised and liberal visitation. At that time, J.H. was in a group home and M.L. was placed with her paternal grandparents with whom she lived intermittently from the age of three months.

The juvenile court also ordered that mother's visits with J.H. be therapeutic supervised visits because of an incident that occurred following a visit with mother in August 2014. J.H. became upset over being in foster care, broke away from mother and the social worker and ran to an underpass where she hit the wall and yelled at the passersby to call law enforcement. She also screamed that the social worker was trying to rape her. Back at her group home, she broke a pencil and stabbed her leg with it. She said she wanted to kill herself and asked to be taken to the hospital. She was

---

[1] Statutory references are to the Welfare and Institutions Code.

2

involuntarily committed and evaluated by a psychiatrist who prescribed psychotropic medication for her.

Over the ensuing months, J.H. continued to exhibit severe behavioral and emotional issues. She was physically and verbally aggressive and threatened to harm herself and the residents and staff at the group home. By March 2015, she had been involuntarily committed 14 times, four of which resulted in hospitalizations exceeding 72 hours. Meanwhile, mother completed a parenting program. She was participating in but had not completed any of her other services. She was interacting better with J.H. during visitation, however, visitation was still a trigger for J.H.'s decompensation. Of the 14 involuntary commitments, nine of them followed a visit with mother or a cancelled visit.

At the six-month review hearing in March 2015, the juvenile court continued mother's reunification services to the 12-month review hearing which it set for July 2015.

In May 2015, the social worker filed a section 388 petition asking the juvenile court to change M.L.'s visitation to therapeutically supervised visitation because mother was attempting to manipulate M.L. into lying about her paternal grandparents and M.L.'s behavior was getting progressively worse. Mother told M.L. she could come live with her sooner if she said her paternal grandfather physically abused her.

In its report for the 12-month review hearing, the department advised the juvenile court that it would be detrimental to return the girls to mother's custody. The department cited a therapy session in June 2015 during which mother told the therapist that the government was trying to kill everyone. Mother said the government wanted to cut her children's heads off and she was going to warn them. However, she also said that she was going to suggest to them that they allow the government to cut off their heads so they could go to heaven. Then she realized they would not go to heaven because they sinned. Asked how they sinned, mother explained that the children did not listen to adults and talked back to them. Mother's therapist stated that she had never acted that way before.

The department was also concerned that mother still required therapeutic supervision during visitation and coached M.L. into saying that her paternal grandparents physically abused her. The department recommended the juvenile court terminate mother's reunification services as to M.L. and set a section 366.26 hearing to establish a permanent plan. As to J.H., the department recommended the court establish a plan of planned permanent living arrangement because her special needs made her unlikely to be adopted.

In July 2015, the juvenile court convened but continued the 12-month review hearing and ordered the department to assess increasing visits with the girls. In an addendum report prepared the following August, the department recommended the court suspend mother's visitation with J.H. and continue therapeutic supervised visitation with M.L. The department's recommendation as to J.H. stemmed from an incident in August 2015 in which J.H. became erratic and verbally and physically aggressive because mother did not bring her a pair of new shoes as promised. Mother attempted to intervene, but in doing so became verbally aggressive as well and threatened physical violence. J.H.'s therapist recommended the department suspend mother's visits with J.H. The following week, mother was scheduled to have a visit with M.L. Mother was hostile to the therapists and made veiled threats of violence. She told the therapists that in "L.A. some social workers got acid thrown on their faces for taking away a parent's child," and she was heard telling someone on the telephone that she needed an attorney in case she did "something."

In August 2015, the juvenile court set the matter for a contested 12-month review hearing and the following month ordered the department to file a report for a combined 12 and 18-month review hearing (combined hearing) which the court scheduled in November 2015. That same month, the department suspended visitation between J.H. and M.L.

In its report for the 18-month review hearing, the department's recommendations as to J.H. and M.L. remained unchanged. The department reported that J.H. was in a

4

mentor placement from June until October 2015. Her care provider reported that she was erratic and unstable and that her mood changed from "happy to mad" without warning. She displayed violent and aggressive behavior and threatened to make allegations about the care provider to get her into trouble. After J.H. was removed from the mentor placement in October and before the department prepared its report in November, she was placed in 12 foster or group homes, was physically assaultive with staff, and was involuntarily committed twice in October 2015. The department also reported that mother's last therapeutic visit occurred on October 8, 2015, because the supervising services provider was no longer willing to supervise J.H. at their facility following an incident with mother, J.H. and M.L., in which mother teased J.H. about her hair extensions. J.H. required crisis intervention following five visits with mother from June to October 2015.

In November 2015, the juvenile court continued the combined hearing and set it as a contested hearing in January 2016. The court also granted the department discretion to begin extended visitation between mother and J.H. The department informed the court that in November 2015, after J.H. refused to enter foster care, the department placed J.H. with mother on a liberal visit and placed them in emergency housing. Mother reported that J.H. did well with her over the Thanksgiving holiday. The department also informed the court that J.H. did not have a good relationship with M.L. and was verbally abusive to her during visitation. Nevertheless, mother wanted to reunify with her daughters and J.H. and M.L. wanted to reunify with their mother.

In December 2015, the juvenile court set the combined hearing for a contested hearing. It was continued and conducted in March 2016.

Meanwhile, the department filed an addendum report recommending the juvenile court continue J.H.'s extended visit with the goal of progressing to family maintenance. Though J.H.'s out-of-control behavior continued, the department believed it was in her best interest to remain with mother with departmental support. The department's

5

recommendation as to M.L. remained unchanged. The department reported that J.H. was verbally abusive to M.L. and that mother was unable to de-escalate J.H. when the girls were together and J.H. had an angry outburst.

In March 2016, the juvenile court conducted a contested combined hearing. J.H., then 11 years old, testified that she wanted to live with her mother and M.L. She acknowledged that she had not asked to visit M.L., explaining that she had been "stressed out" and had "a lot of stuff on [her] mind." Nine-year-old M.L. testified that she wanted to live with mother and J.H. She had been asking to visit J.H. and said her visits with J.H. were good sometimes and not good other times. They were not good when J.H. got mad and fought. M.L. said she had fun with mother. After J.H. and M.L. testified and left the courtroom, M.L. cried because she thought she was going home with mother. J.H. became upset also and the social worker had to leave the courtroom to help calm her.

Mother testified that despite J.H.'s behavioral issues, she had managed to keep her in her home. She explained that she was authorized to stay in emergency housing until mid-March. After that, she would remain there if it was approved or go live with her sister in Sacramento. She believed that she could manage both girls in her custody.

Social worker Lucina Rojas testified mother completed all of her court-ordered services. She said that M.L. wanted to live with mother but was also indecisive because she loved her mother and her paternal grandparents. More recently, she expressed a preference to live with mother. Rojas believed it would be detrimental to M.L. to return to mother's custody because J.H. was verbally abusive to her and mother was unable to effectively intervene. In addition, mother's housing situation was unstable and mother had not progressed beyond therapeutically supervised visits with M.L. She said mother's sister had a place for mother and both girls in Sacramento.

Following testimony, the parties stipulated that mother's sister was willing to allow mother and the girls to live with her for an undisclosed period of time.

At the conclusion of the hearing, the juvenile court ordered J.H. returned to mother under family maintenance and set a family maintenance review hearing. The court found it would be detrimental to return M.L. to mother's custody, terminated mother's reunification services and set a section 366.26 hearing to consider a permanent plan of legal guardianship with the paternal grandparents. In ruling, the court explained that M.L. was younger and more at risk of being harmed by J.H. and that mother was not able to protect her.

This petition ensued.

### DISCUSSION

Mother contends there is insufficient evidence to support the juvenile court's findings that it would be detrimental to return M.L. to her custody and that she was provided reasonable visitation. On a challenge to the sufficiency of the evidence, we review the record to determine whether there is substantial evidence to support the juvenile court's findings. The appellant has the burden of showing the finding or order is not supported by substantial evidence. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

The purpose of reunification services is to reunify a family. In fact, the dependency statutes presume that a dependent child will be returned to parental custody at each review hearing unless the juvenile court finds that return would be detrimental to the child. (§§ 366.21, subds. (e) & (f), 366.22, subd. (a)(1).) In addition, visitation is a critical component of a reunification plan and the department has an obligation to make reasonable efforts to facilitate reunification even under difficult circumstances.

In this case, J.H.'s extreme behavior and mother's inability to redirect her impacted M.L.'s safety in the home and the family's ability to maintain a visitation schedule. The record is replete with descriptions of J.H.'s volatility and potential for aggression and violence. She required numerous crisis interventions and routinely targeted those closest to her, including M.L. J.H. was also determined to be with mother and, in the end, mother was the best suited to take care of her.

7

Mother argues that the juvenile court's decision not to return M.L. to her custody is unfair to M.L. She states, "The way this case has been structured, [she] was destined to lose one of her children no matter what she did. This is untenable." (Writ petition at p. 19.)

The juvenile court's decisions, however, are not driven by fairness. Rather, the juvenile court's focus and primary consideration must always be on the best interest of the child. (*In re Chantal S*. (1996) 13 Cal.4th 196, 206.) In this case, the juvenile court had to determine what was best for J.H. *and* M.L. The court rightly determined that it was in J.H.'s best interest to be placed with mother. Having made that decision, the question then became whether M.L. could be safely returned to mother's custody or whether returning M.L. would be detrimental to her. The court properly determined that it would be detrimental to M.L. given J.H.'s extreme behavioral problems, mother's inability to protect M.L. from J.H., and M.L.'s younger age and inability to protect herself.

Mother also argues the department acted unreasonably in not implementing the court's visitation orders. Specifically, she faults the department for not advancing her beyond therapeutically supervised visitation with M.L., not complying with the sibling visitation order and not arranging family visitation. Mother fails to show, however, why the department's failure to strictly comply was unreasonable under these circumstances.

According to the record, it was mother who in April 2015 requested therapeutically supervised visits with M.L. She said she preferred it even though the social worker told her that it signaled a regression and was not positive for her case. Thereafter, mother threatened the therapists during a visit in August 2015, demonstrating that a heightened level of supervision was warranted in her case.

The record further reflects that J.H. and M.L. had sibling visits prior to the August 2015 incident. However, the department suspended them after the incident because, according to M.L.'s grandparents, M.L. was becoming increasingly defiant and

8

aggressive after contact with mother and was beginning to emulate J.H.'s behavior. Under those circumstances, it was not unreasonable for the department to suspend sibling visits until it was safe and beneficial to resume them.

In our view, the department was attempting to reunify mother and her daughters under very difficult circumstances and made reasonable efforts to promote visitation to the fullest extent possible.

We conclude substantial evidence supports the juvenile court's findings regarding detriment and reasonableness of services and deny the petition.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court.